United States District Court
Southern District of Texas
FILED

JUN 0 6 2003

Michael N. Milby, Clerk of Court

United States District Court
Southern District of Texas
ENTERED

JUN 0 9 2003

Michael N. Milby, Clerk of Court
By Deputy Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| DAVID HINDS, Plaintiff, | § § § | |
| v. | § § | CIVIL ACTION NO. B-02-111 |
| WARDEN DAVID FORREST, ET AL, Defendant. | § § § | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is Defendant's Motion for Summary Judgment (Doc. # 17). Plaintiff David Hinds failed to respond to the Defendant's Motion for Summary Judgment. For the following reasons, this Court recommends that Defendant's motion be GRANTED, and Plaintiff's suit be DISMISSED WITH PREJUDICE.

### BACKGROUND

The factual background in this case will be constructed in accordance with the affidavits of Dr. Genak Desai, Warden David Forrest, and Heath Services Administrator Lou Ann Collins.

A.  **Facts Contained in the Affidavit of Dr. Desai**

Dr. Desai is the medical doctor assigned to the Willoughby State Jail Facility. Exhibit A of Defendant's Summary Judgment Motion. Dr. Desai has examined the relevant medical records relating to Mr. Hinds. Id. Based on these records and his own personal knowledge, it can be established that on January 30, 2002, Mr. Hinds complained of ankle pain associated with playing basketball. Id. He was seen in Triage by the nursing staff within twenty minutes of the injury. Id. Hinds complained of a similar injury to the same area approximately one month before the January 30, 2002, injury. Id. Dr. Desai was notified of the injury at that time, and he told the staff to set up

x-rays, apply an ace wrap to the left ankle, provide the inmate with crutches, apply ice to the area for 24 hours, prescribe Tylenol for the pain, and stay in from recreation for three months. Id. X-rays were taken of Mr. Hinds left ankle, and they came back normal. Id. The x-rays were reviewed and interpreted by Dr. Harry Batters, M.D. Id.

Hinds then requested to see a doctor. He was seen by Dr. Desai, and in addition to the treatment noted above, Hinds was taken off of work for three months. Id. On February 13, 2002, Hinds again complained of left ankle pain, and Dr. Desai examined him that same day. Id. No swelling or tenderness was found during the examination, and the doctor's evaluation of the ankle was normal. Id. On March 27, 2002, Hinds again complained of left ankle pain and also complained of foot pain. Id. Dr. Desai again examined Hinds. Id. There was no swelling or deformity found during the examination. Id. His gait was normal and he was able to bear weight on the ankle. Id. The examination of the ankle was, again, normal. Id.

On April 9, 2002, Mr. Hinds complained that he had misplaced his ankle brace and arch support. Id. The items could not be located, and he was given another ankle brace and arch support by J. Medina, a licensed vocational nurse at the facility. Id.

On April 11, 2002, Hinds again complained of left ankle pain. Id. Dr. Desai examined him again and found that there was no swelling. Id. His range of motion was normal and there was no fracture or dislocation. Id. At that time, there was no indication for any medication. Id. The examination of the ankle was normal. Id. On April 23, 2002, Hinds again complained of left ankle pain. Id. Dr. Desai examined him again on April 24, 2002. Id.

On May 17, 2002, Mr. Hinds again complained of left ankle pain. Id. Dr. Desai was on vacation at that time, so Hinds was examined by Dr. J.D. Thompson, M.D. Id. Dr. Thompson noted

that his previous x-ray was normal. Id. Dr. Thompson examined Hinds' left ankle, and there was no swelling. Id. Hinds had full range of motion. Id. Dr. Thompson noted that there was no need to add any additional restrictions and prescribed ibuprofen for ten days. Id. The aforementioned events conclude Hinds' medical history at the Willacy Unit for complaints relating to his left ankle and/or foot. Id.

The medical treatment of Hinds appears to have been reasonable. Id. The treatment provided to Hinds comported with the proper standard of care from a medical doctor for an injury of that nature. Id. No one at the facility, including Dr. Desai, was deliberately indifferent to any serious medical needs of Hinds. Id. In Dr. Desai's professional opinion, Hinds received excellent medical care for his ankle condition while at the Willacy facility. Id.

**B.   Facts Contained in the Affidavit of Warden David Forrest**

David Forrest is the Warden at the Willacy State Jail Facility. Exhibit B of Defendant's Summary Judgment Motion. Mr. Forrest has been the head warden of the facility since March of 1999.

The facility averages one thousand sixteen inmates (1016). Id. On medical staff at the present time, the facility has one full time physician, an HSA (health services administrator), seven registered nurses, seven LVNs, several dental technicians and two records clerks, as well as a contract dentist and a contract mental health professional. Id. There is medical staff on duty constantly at the facility. Id. An inmate can fill out a slip for sick call whenever he has a need, and the sick call slips are picked up daily. Id. Additionally, an inmate can do a "walk-in" where he receives immediate attention. Id.

Warden Forrest had no personal involvement in the medical care provided to David Hinds. Id. The Willacy facility, claims Warden Forrest, does not have a policy, custom or practice of denying inmates their constitutional rights. Id. The facility staff was not deliberately indifferent to any serious medical needs of Mr. Hinds. Id.

Warden Forrest reviewed the Step 1 and Step 2 grievance procedures, and Mr. Hinds' grievances, in his professional opinion, were properly denied. Id. Warden Forrest decided the Step 1 Grievance, and the Step 2 Grievance was decided by a TDCJ Grievance Board. Id. Based on his review of the grievances, Warden Forrest believed at the time, and still believes, that medical care was good and reasonable in this situation. Id.

The medical staff at Willacy is a very well qualified staff. Id. The physicians that examine and treat the inmates are properly educated and duly licensed physicians in the State of Texas. Id. All of the nurses on staff are properly educated and duly licensed. Id.

C.   **Facts contained in the Affidavit of Lou Ann Collins**

Ms. Collins was the Health Services Administrator at the facility where Mr. Hinds was confined during the relevant time period at issue in this case. Exhibit C of Defendant's Summary Judgment Motion. Ms. Collins is a duly licensed registered nurse. Id. Ms. Collins has been the Health Services Administrator at the facility for seven years. Id.

Ms. Collins has examined the relevant medical records of Mr. Hines. Id. The records document the following events: On January 30, 2002, Mr. Hinds complained of ankle pain associated with playing basketball. Id. He was seen in Triage by the nursing staff within twenty minutes of the injury. Id. He complained of a similar injury to the same area approximately one month before the January 30, 2002, injury. Id. Dr. Desai was notified of the incident at that time,

and he told the staff to set up x-rays, apply an ace wrap to left ankle, provide the inmate with crutches, apply ice to the area for 24 hours, prescribed Tylenol for pain and advised the inmate to stay in from recreation for three months. Id. X-rays were taken of Mr. Hinds left ankle, and the x-rays were normal. Id. The x-rays were reviewed and interpreted by another doctor. Id. Mr. Hinds requested to see a doctor on January 1, 2002. Id. He was seen by Dr. Desai that day. Id. In addition to the treatment noted above, he was taken off of work for three months. Id.

On February 13, 2002, Mr. Hinds again complained of left ankle pain, and Dr. Desai examined him that same day. Id. No swelling or tenderness was found during the examination, and the examination of the ankle was normal. Id.

On March 27, 2002, Mr. Hinds again complained of left ankle pain and also complained of foot pain. Id. Dr. Desai again examined Mr. Hinds on that date. Id. There was no swelling or deformity found during the examination. Id. Mr. Hinds' gait was normal and he was able to bear weight on the left ankle. Id. The examination of the left ankle was normal. Id.

On April 9, 2002, Mr. Hinds complained that he had misplaced his ankle brace and arch support. Id. The items could not be located, and he was given another ankle brace and arch support by J. Medina, a licensed vocational nurse at the facility. Id.

On April 11, 2002, Mr. Hinds again complained of left ankle pain. Id. Dr. Desai examined Mr. Hinds again and found that there was no swelling. Id. Mr. Hinds' range of motion was normal and there was no fracture or dislocation. Id. At that time, there was no indication for any medication. Id. The examination of the ankle was normal. Id.

On April 23, 2002, Mr. Hinds again complained of left ankle pain. Id. Dr. Desai examined Mr. Hinds again on April 24, 2002. Id.

On May 17, 2002, Mr. Hinds again complained of left ankle pain. Id. Dr. Desai was on vacation at that time, so he was examined by Dr. J.D. Thompson, M.D. Id. Dr. Thompson noted that his previous x-ray was normal. Id. Dr. Thompson examined Mr. Hinds left ankle, and there was no swelling. Id. Mr. Hinds had full range of motion in his left ankle. Id. Dr. Thompson noted that there was no need to add any additional restrictions and prescribed ibuprofen for ten days. Id. That concluded Mr. Hinds medical history at this facility for complaints relating to his left ankle and/or foot. Id.

Dr. Desai's medical treatment of Mr. Hines was very reasonable. Id. The medical treatment by the medical staff, as noted in the medical records, was also reasonable. Id. The medical treatment provided by Dr. Thompson was also reasonable. Id. The treatment provided to Mr. Hinds comported with the proper standard of care from a medical doctor for an injury of this nature. Id. No one at the facility, including Ms. Collins, was deliberately indifferent to any serious medical needs of Mr. Hinds. Id. In Ms. Collins' professional opinion, Mr. Hinds received excellent medical care for this condition while at the facility. Id.

The documents attached to Ms. Collins' affidavit are the relevant medical records in this case. Id. Ms. Collins is one of the custodians of the medical records at the facility. Id. These records are maintained in the ordinary course of business by the facility. Id. These records are the medical records normally maintained by the facility. Id. The records were made at or near the time that the events occurred and were made by people with personal knowledge of such events. Id. The records were copied prior to Mr. Hinds transfer from this facility. Id. The original records were transferred with the inmate, which is the ordinary practice in TDCJ facilities. Id. The original records always follow the inmate while he is incarcerated within the TDCJ system. Id.

## SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgement as a matter of law."[1] The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which they believe demonstrate the absence of a genuine issue of material fact.[2] The moving party, however, need not negate the elements of the non-movant's case.[3]

Once a proper motion has been made, the nonmoving party may not rest upon mere allegations or denials in the pleadings, but must present affirmative evidence, setting forth specific facts to show the existence of a genuine issue for trial.[4] All evidence must be construed in the light most favorable to the nonmoving party.[5] The nonmoving party's burden is not satisfied by "some

---

[1] FED. R. CIV. P. 56(c).

[2] See Celotex Corp v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S. Ct. 2505 (1986); Colson v. Grohman, 174 F. 3rd 498, 506 (5th Cir. 1999).

[3] See Wallace v. Texas Tech Univ., 80 F. 3d 1042, 1047 (5th Cir. 1996)(citing Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).

[4] See Celotex Corp., 477 U.S. at 322-23; Anderson, 477 U.S. at 257; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-86, 106 S. Ct. 1348 (1986); Colson, 174 F. 3d at 506; Wallace, 80 F. 3d at 1047; Little, 37 F.3d at 1075.

[5] Williams v. Time Warner Operation, Inc., 98 F.3d 179, 181 (5th Cir. 1996); see Colson, 174 F. 3d at 506; Messer v. Meno, 130 F.3d 130, 134 (5th Cir. 1997), cert. denied, 525 U.S. 1067 (1999); Hart v. O'Brien, 127 F. 3d 424 (5th Cir. 1997), cert. denied, 525 U.S. 1103 (1999).

metaphysical doubt as to material facts, conclusory allegations, unsubstantiated assertions, speculation, the mere existence of some alleged factual dispute, or only a scintilla of evidence."[6]

## ANALYSIS

**A.    Defendants were not deliberately indifferent to any serious medical needs of Plaintiff**

To prevail on an Eighth Amendment claim for deprivation of medical care, a prisoner must prove that care was denied and that such denial constituted a "deliberate indifference to serious medical needs, constituting unnecessary and wanton infliction of pain." Johnson v. Treen, 759 F. 2d 1236, 1237 (5th Cir. 1985)(citing Estelle v. Gamble, 97 S.Ct., 285, 291 (1976)). In Estelle v. Gamble, Mr. Gamble complained repeatedly to prison authorities of severe pains in his back, chest, arms and legs. Estelle, 97 S.Ct. at 288-89. Additionally, he complained of "blank outs." Id. at 288-89. Despite his repeated complaints Gamble was only given examinations in the prison infirmary, pain pills and muscle relaxants for months. Id. at 288-89. After continuing his complaints in the face of disciplinary action for shirking work, Gamble was placed in administrative segregation and given quinidine as treatment for irregular cardiac rhythm. Id. at 288-89. Although Gamble had repeatedly made known his subjective feelings of substantial pain to prison officials, the district court dismissed Gamble's complaint for failure to allege facts sufficient to support a conclusion of deliberate indifference. Id. at 288-89. The Fifth Circuit Court of Appeals reversed and remanded the case with instructions to reinstate the complaint. Id. at 293. The Supreme Court then reversed the Fifth Circuit and held that the district court's decision should have been affirmed as it related to the claim for deprivation of medical care. Id. at 293.

---

[6] Little, 37 F.3d at 1075; see Hart, 127 F.3d at 435; Wallace, 80 F.3d at 1047.

In the wake of Estelle v. Gamble, the Fifth Circuit has held that to state a claim alleging deliberate indifference to serious medical needs of a prisoner, a plaintiff must plead facts showing unnecessary and wanton infliction of pain prescribed by the Eighth Amendment. See Johnson, 759 F.2d at 1238. The facts underlying a claim of deliberate indifference must clearly evidence the medical need in question and the alleged official dereliction. Id. at 1238 (citing Woodall v. Foti, 648 F.2d 268 (5th Cir. 1981)). The legal conclusion of deliberate indifference, therefore, must rest on facts clearly evidencing wanton actions on the part of the defendants. Id. at 1238. As stated in Johnson, the Supreme Court defined the common law meaning of wanton in some detail.

> Wanton means reckless -- without regard to the rights of others...Wantonly means causelessly without restraint, and in reckless disregard to the rights of others. Wantonness is defined as a licentious act of one man towards the person of another, without regard to his rights; it has also been defined as a conscious failure of one charged with the duty to exercise due care and diligence to prevent an injury after the discovery of the peril, or under circumstances where he is charged with the knowledge of such peril, and being conscious of the inevitable or probable results of such failure.

Id. at 1238; see also Walker v. Butler, 967 F.2d 176 (5th Cir. 1992). Finally, mere negligence, neglect, or medical malpractice is insufficient to state a claim. Graves v. Hampton, 1 F.3d 315 (5th Cir. 1993); Mendoza v. Lynaugh, 889 F.2d 191 (5th Cir. 1993); Field v. Bosshard, 590 F.2d 105 107 (5th Cir. 1979). As stated in Ruiz v. Estelle, 679 F.2d 1115, 1149 (5th Cir. 1982), cert. denied, 103 S. Ct. 1438 (1983): "[T]he Constitution does not command that inmates be given the kind of medical attention that judges would wish to have for themselves, nor the therapy that Medicare or Medicaid provide for the aged or needy... It prohibits only deliberate indifference to serious medical needs." Id. at 1149.

Moreover, a delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm. Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993). Plaintiff must establish both of these crucial elements to defeat a motion for summary judgment. See id.

Simple disagreement with the medical treatment received or a complaint that the treatment received has been unsuccessful is insufficient to set forth a constitutional violation. Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985); see also Varnado v. Lynaugh, 920 F. 2d 320 (5th Cir. 1991). Even if the jail medical staff committed malpractice in dealing with an inmate's medical needs, this would not suffice to state a constitutional claim. Varnardo, 920 F.2d at 323. Likewise, differing medical opinions, and even negligent medical attention, without more, do not support a claim under 42 U.S.C. Section 1983. Stated simply, a disagreement between an inmate and his or her physician concerning whether certain medical care was appropriate is not actionable under 42 U.S.C. Section 1983. Vanuelos v. McFarland, 41 F.3d 232 (5th Cir. 1995).

As in the instant case, and as authorized by the Fifth Circuit, medical records of sick calls, examinations, diagnoses, and medications are used to rebut the inmate's allegations of deliberate indifference to serious medical needs. Vanuelos v. McFarland, 41 F.3d 232 (5th Cir. 1995).

In the case at bar, the undisputed evidence establishes that Plaintiff received medical care of a high quality. Clearly, Plaintiff cannot establish deliberate indifference to any serious medical needs. Indeed, Plaintiff did not have a serious medical need. Plaintiff was seen promptly upon request and examined and evaluated promptly. Three doctors were involved in his examination and treatment—Dr. Desai, Dr. Thompson and Dr. Batters. Dr. Desai saw Mr. Hinds and diagnosed him with a sprain type injury to his left ankle, for which he prescribed appropriate care. Dr. Batters

reviewed Mr. Hinds' x-rays and diagnosed his ankle as normal, i.e. no fractures or other abnormalities. Dr. Desai and Dr. Thompson saw the Plaintiff subsequent to the initial injury, and their findings indicated that plaintiff had no continuing problems – all tests and examinations were negative for any objective findings or signs of continuing problems with his ankle or foot. Plaintiff simply disagrees with the diagnosis of the doctors involved in his care on the matter, and the treatment prescribed by the doctors. As for Warden Forrest and Nurse Collins, they had no personal involvement in Plaintiff's treatment, so they, of course, have no potential liability. Plaintiff's claim is patently frivolous in light of the existing law and the undisputed facts.

**B.    The Individual Defendants are Entitled to Qualified Immunity**

As with any claim asserted against a government employee or official, the first line of defense is the affirmative defense of immunity from suit, either absolute or qualified.

The modern doctrine of immunity, either qualified or absolute, is the result of explicit judicial balancing of adverse interests which are implicated in suits brought by private persons allegedly injured by the acts of public officials. See Butz v. Economou, 98 S. Ct. 2909, 2912 (1978). On hand, there is the private desire to obtain redress from governmentally imposed injuries; as well as, the public interest in both punishment and deterrence of official wrongdoing. Id. On the other hand, there is the public aim of shielding officials from liability so that they do not become overly cautious in the performance of their duties. See Harlow v. Fitzgerald, 102 S. Ct. 2727, 2736-38 (1982); Butz, 98 S. Ct. at 2909-12; see also The Supreme Court, 1981 Term, 96 Harv. L. Rev. 4, 229 (1982); *Schuck, Suing Our Servants*: The Court, Congress, and the Liability of Public Officials for Damages, 1980 Sup. Ct. Rev. 281, 281-85 (1980).

As courts have weighed the conflicting values inherent to the immunity concept, the courts

11

have acknowledged that the scales do not always tip evenly. Butz, 98 S. Ct. at 2909-12. For those officials whose governmental functions are especially sensitive or whose constitutional status requires complete protection form suit, the Supreme Court has recognized an absolute immunity defense. Eastland v. United States Serviceman's Fund, 95 S.Ct. 1813, 1821 (1975) (ruling that legislators have absolute immunity for acts in their legislative capacity); Stamp v. Sparkman, 98 S.Ct. 1099, 1108 (1978) (deciding that judges have absolute immunity for acts in their judicial capacity); Imbler v. Pachtman, 96 S.Ct. 984, 994-95 (1976) (stating that prosecutors have absolute immunity for acts in initiating and pursuing a prosecution); Butz, 98 S.Ct. at 2912 (noting that other executive officers have absolute immunity for performing prosecutorial or adjudicative functions); Nixon v. Fitzgerald, 102 S.Ct. 2690, 2704 (1982) (revealing that the President of the United States is protected by absolute immunity).

Officials whose functions do not require complete insulation from liability, such as the officials involved in the instant case, are not protected by the doctrine of absolute immunity. Butz, 98 S.Ct. at 2909-12. Instead, these individuals have been accorded a qualified immunity. Id. (ruling that qualified immunity is recognized for certain Executive Branch officials); Scheuer v. Rhodes, 94 S.Ct. 1683, 1692-93 (1974) (noting that qualified immunity is recognized for governors and their aides); Pierson v. Ry, 87 S.Ct. 1213, 1218-19 (1967) (ruling that qualified immunity is recognized for police officers).

Prior to 1982, the court utilized a two-prong, subjective/objective test for qualified immunity. See Wood v. Strickland, 95 S.Ct. 992, 1000-01 (1975). Under this test, public officials had the burden of proving their good faith. See id. Many courts, under this test, considered the subjective element to be a question of fact, and this approach was criticized in Harlow v. Fitzgerald, 102 S.Ct.

2727, 2737-38 (1982). The court reasoned that this approach was not workable because, in part, substantial costs were being accumulated to litigate the subjective good faith of governmental officials. Id. These costs included the risk of trial, distraction of officials from their governmental duties, inhibition of discretionary actions, and deterrence of able people from entering public service. Id. at 2737.

As a result of the hardships under the subjective/objective test, the Supreme Court eliminated the subjective element of the qualified immunity test. Id. at 2738. The Court concluded that utilizing the new standard would allow many claims to be resolved by summary proceeding. Id. at 2738-39. As a general rule, under the doctrine of qualified immunity, government officials are shielded from liability as long as their actions can reasonably be thought consistent with the rights they are alleged to have violated. Anderson v. Creighton, 107 S.Ct. 3034, 3038 (1987). In other words, government officials are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable officer would have known. Harlow, 102 S.Ct. at 2738. For a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable person would understand that what he was doing would violate the right. Melear v. Spears, 862 F.2d 1177, 1183 (5th Cir. 1989).

In addition to the fact that Plaintiff is not able to state a potential constitutional violation, even if the Plaintiff had been able to state such a violation, the individual Defendants are all entitled to qualified immunity from suit, since they did not violate clearly established constitutional rights of which a reasonable official would have known.

## RECOMMENDATION

The undisputed summary judgement evidence clearly establishes that Plaintiff received, at the very least, reasonable medical care while he was at the facility. He was promptly seen by medical staff and treated appropriately in every situation. The fact that Plaintiff may have preferred some other type of medical treatment, or the fact that he disagreed with the medical treatment provided is not sufficient to establish any type of constitutional claim. Finally, even if Plaintiff could establish a constitutional violation, Defendants are entitled to qualified immunity from suit. Plaintiff's claims, therefore, must be dismissed with prejudice.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.[7]

DONE at Brownsville, Texas, this 6th day of June, 2003.

Felix Recio
United States Magistrate Judge

---

[7] Douglass v. United States Automobile Association, 79 F.3d 1415 (5th Cir. 1996).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| DAVID HINDS, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. B-02-111 |
| | § | |
| DAVID FORREST, ET AL, | § | |
| Defendant. | § | |

## ORDER

Before the Court is the Magistrate Judge's Report and Recommendation in the above-referenced cause of action. After a de novo review of the file, the Magistrate Judge's Report and Recommendation is hereby ADOPTED. The Defendant's Motion for Summary Judgment (Doc. # 17) is hereby GRANTED, and Plaintiff's case, in its entirety, is hereby DISMISSED WITH PREJUDICE.

DONE at Brownsville, Texas this _____ day of _____, 2003.

Hilda Tagle
United States District Judge